UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLINE BRODIE, ANGELA HUNTER, and ACCESS NOW, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPEEDWAY, LLC,<br><br>Defendant. | Case No.<br><br>Filed Electronically |

## CLASS ACTION COMPLAINT

COMES NOW, Caroline Brodie, Angela Hunter and Access Now, Inc. ("Plaintiffs") on behalf of themselves and all others similarly situated and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action individually and on behalf of all others similarly situated against Speedway, LLC ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations owned, operated, controlled and/or leased by Defendant ("Defendant's facilities").

2. Plaintiffs Caroline Brodie and Angela Hunter have mobility disabilities and are limited in the major life activity of walking, which has caused them to be dependent upon wheelchairs for mobility.

3. Plaintiff Access Now, Inc. ("ANI") is a civil rights organization whose members, including Plaintiff Brodie and Hunter, have various disabilities, including mobility disabilities.

4. Plaintiffs Brodie and Hunter have patronized Defendant's facilities and were denied full and equal access as a result of Defendant's inaccessible parking lots and paths of travel.

5. Plaintiffs' experiences are not isolated—Defendant has systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendant's parking facilities.

6. In fact, numerous facilities owned, controlled and/or operated by Defendant have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, and these parking facilities have had accessibility issues persist for years.

7. The existence and persistence of inaccessible conditions in Defendant's parking facilities demonstrate that the centralized policies and practices Defendant employs with regard to the design, construction, alteration, maintenance and operation of its facilities cause access barriers, and/or allow them to develop and persist at Defendant's facilities.

8. Unless Defendant is required to remove the access barriers described below, and required to change its policies and practices so that access barriers do not reoccur at Defendant's facilities, Plaintiffs and the proposed Class will continue to be denied full and equal access to those facilities as described, and will be deterred from fully using Defendant's facilities.

9. Consistent with 42 U.S.C. § 12188, Plaintiffs seek a permanent injunction requiring:

   a) that Defendant remediate all parking and path of travel access barriers at its facilities, consistent with the ADA;

   b) that Defendant change its corporate policies and practices so that the parking and path of travel access barriers at its facilities do not reoccur; and,

    c) that Plaintiffs' representatives shall monitor Defendant's facilities to ensure that the injunctive relief ordered pursuant to Paragraph 5(a) and 5(b) has been implemented and will remain in place.

10. Plaintiffs' claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate….Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

11. The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

12. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

13. Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying

3

individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

14. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

15. Convenience stores, like Defendant, are public accommodations. 42 U.S.C. § 12181(7).

16. Title III and its implementing regulations define discrimination to include the following:

   a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

17. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

18. The ADA also provides for specific injunctive relief, which includes, but is not limited to, the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

19. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

20. Plaintiffs' claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

21. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

22. Plaintiff Caroline Brodie, is and, at all times relevant hereto, was a resident of Pennsylvania.  As a result of her disability, Plaintiff Brodie relies on a wheelchair for mobility, and therefore is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

23. Plaintiff Angela Hunter, is and, at all times relevant hereto, was a resident of Ohio. As a result of her disability, Plaintiff Hunter relies on a wheelchair for mobility, and therefore is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

24. Plaintiff Access Now, Inc. is a non-profit organization that provides advocacy services on behalf of individuals with disabilities who are members of a protected class under the

ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

25. Plaintiff ANI has members representing 47 states, and is engaged in seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act.

26. One of the primary purposes of ANI is to represent its members to assure that public accommodations are accessible to and useable by its members, and to assure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations.

27. Defendant Speedway, LLC, is a wholly owned subsidiary of Marathon Petroleum Company and is headquartered at 500 Speedway Drive, Enon, Ohio 45323.

28. Defendant operates gas stations and convenience stores, and therefore is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.    Plaintiffs were Denied Full and Equal Access to Defendant's Facilities.**

29. Plaintiff Brodie has visited Defendant's facility located at 4380 Old William Penn Highway, Monroeville, Pennsylvania ("Subject Property I"), where she experienced unnecessary difficulty and risk due to excessive slopes in the parking facilities.

30. Plaintiff Hunter visited Defendant's facility located at 22251 Euclid Avenue, Euclid, Ohio ("Subject Property II"), where she experienced unnecessary difficulty and risk due to excessive slopes in the parking facilities.

31. As a result of Defendant's non-compliance with the ADA, Plaintiffs' ability to access and safely use Defendant's facilities has been significantly impeded.

32. Plaintiff Brodie frequently travels to the Pittsburgh area and has visited Subject Property I on multiple occasions. Plaintiff Brodies intends to return to Subject Property I on her future trips to the Pittsburgh area.

33. Plaintiff Hunter visits Subject Property II multiple times a year when she travels to the Cleveland area to visit family and friends. Plaintiff Hunter intends to return to Subject Property II.

34. Furthermore, Plaintiffs intend to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA.

35. Plaintiffs will be deterred from returning to and fully and safely accessing Defendant's facilities, however, so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at its facilities.

36. Without injunctive relief, Plaintiffs will continue to be unable to fully and safely access Defendant's facilities in violation of their rights under the ADA.

37. As individuals with a mobility disability who are dependent upon a wheelchair, Plaintiffs are directly interested in whether public accommodations, like Defendant, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II. Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to its Facilities.

38. Defendant owns, controls and/or operates various Speedway gas stations and convenience stores throughout the United States.

7

39. As the common owner, controller and/or operator of its facilities, Defendant employs centralized policies and practices with regard to the design, construction, alteration and maintenance of its facilities.

40. To date, Defendant's centralized design, construction, alteration, maintenance and operational policies and practices have systematically and routinely violated the ADA by designing, constructing and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendant's facilities are maintained.

41. On Plaintiffs' behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

   a) 4380 Old William Penn Highway, Monroeville, PA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii. A portion of the route to the store entrance had a cross slope exceeding 2.1%; and

      iv. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

   b) 4420 Browns Hill Road, Pittsburgh, PA

      i. The surfaces of one or more access aisles had slopes exceeding 2.1%;

      ii. A portion of the route to the store entrance had a cross slope exceeding 2.1%; and

      iii. The landing at the top of the curb ramp had a slope exceeding 2.1%.

   c) 22251 Euclid Avenue, Euclid, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. A portion of the route to the store entrance had a running slope exceeding 5.0%.

d) 230 Richmond Road, Richmond Heights, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%.

e) 4549 Mayfield Road South, Euclid, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

f) 27939 Chagrin Boulevard, Woodmere, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. A portion of the route to the store entrance had a cross slope exceeding 2.1%.

g) 34740 Euclid Avenue, Willoughby, OH

      i. No clear markings designating "accessible" space;

      ii. No access aisle was provided; and

      iii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

h) 38700 Mentor Avenue, Willoughby, OH

      i. No clear markings designating "accessible" space.

i) 4189 State Route 306, Willoughby, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

  iii. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%;

  iv. The landing at the top of the curb ramp had a slope exceeding 2.1%;

  v. One or more purportedly accessible spaces were not marked with required signs; and

  vi. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

 j) 7745 Reynolds Road, Mentor, OH

  i. No clear markings designating "accessible" space;

  ii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces; and

  iii. One or more signs designated spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

 k) 7340 Lakeshore Boulevard, Mentor, OH

  i. No clear markings designating "accessible" space; and

  ii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

 l) 6885 Center Street, Mentor, OH

  i. No clear markings designating "accessible" space; and

  ii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

 m) 1275 Canton Road, Akron, OH

  i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

  ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

  iii. One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

 n) 3021 South Arlington Road, Akron, OH

  i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. One or more purportedly accessible spaces were not marked with required signs; and

      iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

o) 3535 Massillon Road, Uniontown, OH

      i. A curb ramp projected into an access aisle.

p) 2129 South Main Street, Akron, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. One or more purportedly accessible spaces were not marked with required signs; and

      iii. No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

q) 140 Highway 46 East, Lodi, NJ

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

      iii. A portion of the route to the store entrance had a cross slope exceeding 2.1%.

42. Importantly, Defendant has allowed many of the properties identified above to remain inaccessible and ADA non-compliant despite having been on notice of their inaccessibility.

43. For example, on January 16, 2015, a lawsuit filed in this Court identified as inaccessible the same property Plaintiffs here have identified as inaccessible at Paragraph 41(a). *See Snyder v. Speedway, LLC*, No. 15-cv-77, Dkt. No. 1 at ¶ 19(b) (W.D. Pa. Jan. 16, 2015).

44. Also illustrative is *Timoneri v. Speedway*, 15-cv-2423 (N.D. Ohio), where the plaintiff, on November 24, 2015, filed a lawsuit that identified as inaccessible the same properties

Plaintiffs here have identified as inaccessible at Paragraphs 41(c)-(l). *See Timoneri v. Speedway*, No. 15-cv-2423, Dkt. No. 1 at ¶ 23(a), (c)-(g), (j)-(k), (o), (r) (N.D. Ohio Nov. 24, 2015).

45. The fact that numerous of Defendant's facilities continue to deny, and for years have denied individuals with mobility-related disabilities full and equal access to Defendant's facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiffs experienced is not isolated, but rather, caused by Defendant's systemic disregard for the rights of individuals with disabilities.

46. Defendant's systemic access violations and Defendant's allowance of these violations to exist for years on end demonstrate that Defendant's policies and practices fail to design, construct and alter its facilities so that they are readily accessible and usable, and/or that Defendant's maintenance and operational policies and practices are unable to maintain accessibility of Defendant's facilities.

47. Despite multiple previous lawsuits regarding the inaccessibility of Defendant's parking facilities, Defendant has failed to modify its maintenance and operational policies and practices as demonstrated by the ADA violations identified herein.

48. Accordingly, Plaintiffs seek an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's network of facilities.

## **CLASS ALLEGATIONS**

49. Plaintiffs bring this class action on behalf of themselves and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, and seek to certify a class of all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at locations for which Defendant owns and/or controls the parking facilities.

50. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

51. <u>Typicality:</u> Plaintiffs' claims are typical of the claims of the members of the class. The claims of the Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

52. <u>Common Questions of Fact and Law:</u> There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described.

53. <u>Adequacy of Representation:</u> Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

54. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

**SUBSTANTIVE VIOLATION**

55. The allegations contained in the previous paragraphs are incorporated by reference.

56. On information and belief, Defendant's facilities were altered, designed, or constructed, after the effective date of the ADA.

57. Defendant's facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

58. Further, the accessible features of Defendant's facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 U.S.C. § 36.211.

59. The architectural barriers described above demonstrate that Defendant's facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendant's facilities were not maintained so as to ensure that they remained accessible to and usably by individuals who use wheelchairs.

60. Furthermore, the architectural barriers described above demonstrate that Defendant has failed to remove barriers, as required by 42 U.S.C. Section 12182(b)(2)(A)(iv).

61. Defendant's repeated and systemic failures to design, construct and alter facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of its facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

62. Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

63. Defendant is required to provide individuals who use wheelchairs full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

64. Defendant has failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

65. Defendant has discriminated against Plaintiffs and the Class in that it has failed to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

66. Defendant's conduct is ongoing and continuous, and Plaintiffs have been harmed by Defendant's conduct.

67. Unless Defendant is restrained from continuing its ongoing and continuous course of conduct Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiffs and the Class.

68. Given that Defendant has not complied with the ADA's requirements to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiffs invokes their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the class, pray for:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendant to: (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  that Defendant change its corporate policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiffs shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiffs, and naming Plaintiffs as class representative and appointing their counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated:  January 27, 2017                                    Respectfully Submitted,

By: */s/ Benjamin J. Sweet*
Benjamin J. Sweet
Edwin J. Kilpela, Jr.
Stephanie K. Goldin
**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
 Pittsburgh, PA 15222
(p) 412.322.9243
(f) 412.231.0246