UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLINE BRODIE, ANGELA HUNTER, and ACCESS NOW, INC., individually and on behalf of all other similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　　　　vs.<br><br>SPEEDWAY LLC,<br><br>　　　　Defendant. | Case No. 2:17-cv-00133-MRH |

**DEFENDANT SPEEDWAY LLC'S REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Cannot Avoid the Third Circuit's Pronouncements in *Mielo v. Steak 'N Shake*. ................................................................................................................... 2

II. Plaintiffs' Claims Based on Section 211 Fail as a Matter of Law Because They Are Based on a Fundamentally Flawed Interpretation of that DOJ Regulation. ....................... 3

    A. Plaintiffs' *Interpretation* of Section 211 Improperly Circumvents and Renders a Nullity the ADA's Circumstance-Dependent Required Analysis of the Burden and Cost of Remediation. ................................................................. 3

    B. The Section 211 DOJ Regulation Imposes No Obligation to Proactively Engage in an "Ongoing Search for *Potential* Violations That May Not Exist." ................................................................................................................. 4

        1. Plaintiffs' Argument Concerning the Text of DOJ's Section 211 Regulation Does Not Support Their "Novel Interpretation." ...................... 4

        2. The Third Circuit Rejects Plaintiffs' Contention that Congress Put the Burden on Public Accommodations to Anticipate and Prospectively Correct ADA Violations. ......................................................... 6

        3. That Speedway Has Adopted a Maintenance Policy Shows Its Efforts to Comply with the ADA and in No Way Establishes that Section 211 *Requires* Such a Policy. ........................................................... 7

    C. Plaintiffs Have No Private Right of Action to Enforce Section 211. ...................... 8

    D. The Canon of Constitutional Avoidance Bars Plaintiffs' Interpretation of Section 211 .............................................................................................................. 10

Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment does not meet Speedway's arguments head-on and, instead, makes admissions that actually prove why the Court should grant partial summary judgment.  For example:

- Plaintiffs' Brief fails to adequately distinguish *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467 (3d Cir. 2018), which raised serious questions about Plaintiffs' "novel interpretation" of Section 211.  Instead, Plaintiffs' Brief actually agrees with *Mielo* that Section 211 does not require public accommodations to adopt the type of self-evaluation policies that Plaintiffs request in their Complaint.  (*See* Pl. Br. at 9-10.)

- Plaintiffs' Brief argues DOJ regulatory intent purportedly supports their interpretation that Section 211 requires ongoing self-evaluation and proactive remediation.  But, in making that argument, Plaintiffs never dispute that DOJ's regulations implementing Title II of the ADA include language imposing a self-evaluation requirement but DOJ's corresponding Title III regulations (enacted at the same time) omit that language.  Therefore, the *unius exlusio* (negative implication) canon of construction bars Plaintiffs' interpretation, and Plaintiffs do not dispute the application of this canon.

- Plaintiffs' Brief admits that the ADA does not require remediation in ***all*** instances, only when remediation is "readily achievable." (Pl. Br. at 5.)  Yet, Plaintiffs' Complaint attempts to bypass that circumstance-dependent, readily-achievable analysis by entry of a company-wide injunction requiring Speedway to adopt policies to proactively remediate ***all potential*** access barriers.  Plaintiffs seek such broad relief despite their acknowledgment that the Third Circuit rejected such a sweeping remedy in favor of plaintiffs identifying specific violations at specific stores, so that remedies can be tailored to store-specific circumstances.  (*See* Pl. Br. at 11-14 (citing *Mielo*, 897 F.3d at 477, n.10).)

These and other concessions in Plaintiffs' Brief, discussed more fully below, underscore the meritless nature of Plaintiffs' "novel interpretation" of Section 211.  Simply put, Section 211 does not impose an ongoing obligation to seek out and proactively remediate hypothetical ADA violations.  Even if Plaintiffs could establish their interpretation of Section 211 was proper, Plaintiffs' Brief still does not overcome the additional hurdles that (i) no private cause of action exists to enforce Section 211 and (ii) the Court must reject Plaintiffs' interpretation of 211 under the canon of constitutional avoidance because, in violation of Due Process, Plaintiffs' *interpretation* of the regulation fails to give fair notice of the broad-sweeping obligation Plaintiffs seek to enforce.

I.  **Plaintiffs Cannot Avoid the Third Circuit's Pronouncements in *Mielo v. Steak 'N Shake*.**

Plaintiffs' Brief does not deny that Plaintiffs here advance the same ADA/Section 211 claims that were at issue in *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467 (3d Cir. 2018). Plaintiffs' Brief also does not deny that *Mielo* expressed serious doubt about the legal foundation for such claims, which it termed a "novel interpretation of the ADA and its corresponding regulations." *Id.* at 478.

Plaintiffs try to avoid *Mielo* by arguing it mischaracterizes their theory of the case. That is simply untrue. *Mielo* summarized the claims at issue as not only requiring public accommodations to "correct discriminatory access violations" they know about, but also to "adopt policies…to actively *seek out* potential violations" and remedy them before they reoccur. *Id.* at 477. Plaintiffs assert that they do not request that the Court compel Speedway to adopt such a self-evaluation policy. Yet, implementation of a self-evaluation policy is precisely what the Complaint seeks: "a permanent injunction directing Defendant…to modify its corporate policies and practices to prevent the reoccurrence of discriminatory conditions." (*Id.* at 3.) Other than through a policy requiring ongoing self-evaluations for potential ADA violations, how else could an injunction modify Speedway's corporate policy to "actively seek out potential violations" and "prevent the[ir] reoccurrence"?

Because *Mielo* accurately characterizes Plaintiffs' Complaint as ultimately seeking implementation of a self-evaluation and proactive remediation policy, and because even Plaintiffs readily admit that the ADA and Section 211 "do[] not affirmatively require the adoption of [such] self-evaluation policies," (Pl. Br. at 9-10), the Court should conclude that partial summary judgment is appropriate on the aspect of Plaintiffs' case seeking such unsanctioned relief under Section 211.

**II. Plaintiffs' Claims Based on Section 211 Fail as a Matter of Law Because They Are Based on a Fundamentally Flawed Interpretation of that DOJ Regulation.**

**A. Plaintiffs' *Interpretation* of Section 211 Improperly Circumvents and Renders a Nullity the ADA's Circumstance-Dependent Required Analysis of the Burden and Cost of Remediation.**

Plaintiffs submit that "Section 211 requires public accommodations to maintain accessibility over time, ***subject to established readily achievable standards that account for burden and cost***." (Pl. Br. at 5 (emphasis added).) This sentence reveals that even Plaintiffs know their "novel interpretation" of Section 211—requiring public accommodations to perform ongoing self-evaluations and proactively remediate all potential access barriers—is simply unworkable, both legally and practically. The sentence expressly recognizes what the Third Circuit explained in *Mielo* and what Speedway has argued here—the ADA does not require remediation of access barriers in the abstract; rather, each alleged access barrier and proposed remedial measure must be evaluated on an individual basis, under the readily achievable and other standards accounting for real-world concerns of cost and burden. Congress intentionally imposed "readily achievable" limitations on ADA requirements to avoid the draconian result Plaintiffs' seek to impose—*i.e.*, an open-ended and potentially limitless obligation. Thus, the upshot of Plaintiffs' arguments is a plea for a new public policy, one already rejected by Congress, the DOJ, and the Third Circuit in *Mielo*.

It is therefore improper to read Section 211 as requiring blanket policies compelling prospective remediation of ***all potential*** ADA violations irrespective of their cost or burden. Such circumstance-dependent factors are simply impossible to consider when enacting a general policy requiring remediation of unspecified hypothetical ADA violations. Such factors can be considered only when dealing with a specific violation, at a particular site, requiring a particular remediation. Accepting Plaintiffs' "novel interpretation" of Section 211 would erroneously circumvent that individualized analysis by requiring prospective remediation of ***all potential*** barriers at 2,800 sites.

It therefore comes as no surprise that DOJ refuses to issue detailed regulations for how "features" must be maintained in compliance with Section 211. In fact, DOJ "has declined to establish any independent requirement for an annual assessment or self-evaluation" because that "is best left to the public accommodations…to establish policies to assess compliance that are appropriate to their *particular circumstances*." (Pl. Br. at 9 (quoting 28 CFR § Pt. 36, App. C, § 36.304) (emphasis added).) Where DOJ has found it inappropriate to establish such blanket policies, the Court should decline to create, by a permanent injunction, a general policy for how Speedway must maintain its facilities—in particular, the parking lot slope—at its 2,800 locations.

Critically, Plaintiffs make no attempt to refute perhaps the best evidence that DOJ did not intend, in enacting Section 211, to impose the proactive obligation advanced by Plaintiffs. Specifically, Plaintiffs do not address the distinction between DOJ's regulations for Title II and Title III of the ADA, adopted at the same time, where only the Title II regulations impose a self-evaluation requirement. (*See* Def. Memo. at 9-11.) Thus, under the negative implication canon of construction, the Court must construe Section 211 as not requiring such ongoing self-evaluation.

> B. **The Section 211 DOJ Regulation Imposes No Obligation to Proactively Engage in an "Ongoing Search for *Potential* Violations That May Not Exist."**
>
> 1. **Plaintiffs' Argument Concerning the Text of DOJ's Section 211 Regulation Does Not Support Their "Novel Interpretation."**

Plaintiffs focus on the term "maintain," ignoring its context. Section 211, in context, requires public accommodations to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by individuals with disabilities." Plaintiffs acknowledge that "features" is a controlling term and that Speedway has argued it makes no sense to say parking lot slope is a "feature" that can be maintained "in operable working condition." (Pl. Br. at 6-7.) Plaintiffs nevertheless submit that Section 211 requires public

-4-

accommodations to "maintain *all* accessible features." (*Id.* at 6.) But Plaintiffs never explain how, practically speaking, parking lot slopes can be maintained "in operable working condition."

Instead, Plaintiffs cite DOJ documents that actually reaffirm Speedway's point. In one document, DOJ discusses maintaining accessible paths by removing blockages/obstructions (*e.g.*, boxes) and servicing/repairing lifts and elevators. (*See* Pl. Br. at 7 (quoting 73 Fed. Reg. at 34523).) In other documents, DOJ discusses maintaining ramps and sidewalks. (*See id.* at 8 (citing "ADA Guide for Small Towns" & "Maintaining Accessible Features in Retail Establishments").) These references make sense, as one can "maintain" an accessible path "in operable working condition" by removing physical obstructions, repairing equipment that facilitates movement, and eliminating large cracks and resulting uneven surfaces in ramps and sidewalks.

Nowhere, however, does the DOJ discuss how to "maintain" the ***grade*** of parking lot slope "in operable working condition"—because it makes no sense to speak in those terms.[1] Indeed, DOJ's "Maintaining Accessible Features in Retail Establishments" document and its 'Checklist for Maintaining Accessible Features' do not advise the reader to check the ***grade*** of parking lot slope, only to remove obstacles and to maintain ramps and sidewalks to prevent large cracks and uneven surfaces. Maintaining slope is not the same as removing snow or potted plants from a pathway, servicing an elevator, or even filling a crack in a ramp or sidewalk that causes an uneven surface. Evaluating the grade of slope requires specialized equipment, which employees must be trained to use, and then, if remediation is required, requires extensive and complicated construction work. Plaintiffs ignore this reality of how, practically speaking, one "maintains" parking lot slope "in operable working condition." Unlike barriers or obstacles in a pathway, which are clearly

---

[1] Plaintiffs complain only about the grade of slope in Speedway's parking lots—they do not complain about inclement weather conditions affecting the slope.

visible, issues with grades of slope are not self-evident or readily detectable and thus require a different approach. It is not surprising that DOJ guidance documents do not embrace such repairs.

Further ignoring the full context of Section 211, Plaintiffs' Brief never denies Speedway's argument that Section 211 includes qualifying language in subparts (b) and (c) that limit the scope of the compliance obligation in subpart (a). (*See* Def. Memo. at 7.) Thus, contrary to Plaintiffs' assertion that DOJ intended the obligation in subpart (a) to be "comprehensive and all-encompassing," DOJ actually intended the obligation to be limited and circumstance-dependent.

### 2. The Third Circuit Rejects Plaintiffs' Contention that Congress Put the Burden on Public Accommodations to Anticipate and Prospectively Correct ADA Violations.

In *Mielo*, the Third Circuit stated that, in enacting the ADA, Congress did not intend to burden public accommodations by requiring "an ongoing search for *potential* violations that may not exist." *Mielo*, 897 F.3d at 477, n. 10. Instead, the Third Circuit explained that ***the "text" of the ADA suggests Congress intended for public accommodations "to spend their limited financial resources on correcting only the access violations that disabled patrons have actually brought to the [public accommodation's] attention***." *Id.* Hence, according to precedent from the Third Circuit, adopting Plaintiffs' interpretation of Section 211—that Speedway must proactively search for and remediate potential violations, without any consideration of the burden and expense associated with each particular violation—would contravene Congressional intent.[2]

Plaintiffs try to avoid this aspect of *Mielo*, arguing:

> The *Mielo* court's limited evaluation, however, failed to account for the fact that Congress comprehensively accounted for the competing interests of ensuring a broad elimination of discrimination and that

---

[2] Contrary to Plaintiffs' argument, Speedway does not assert that "public accommodations are permitted to passively allow accessibility to lapse over time." (Pl. Br. at 10.) Plaintiffs acknowledge that Speedway has policies in place designed to ensure ADA compliance. (*See id.* at 15-17.) Plaintiffs wrongly equate not having an open-ended policy to proactively seek out potential violations of ADA Standards with "passively allow[ing] accessibility to lapse over time."

> businesses are not financially overburdened by incorporating into the ADA both the "undue burden" standard (28 C.F.R. § 36.303(a) and § 36.303(g)) and the "readily achievable" standard (42 U.S.C. § 12181(9)) when assessing whether accessibility must be provided.

(Pl. Br. at 14.) This argument actually supports Speedway's position by acknowledging that the undue burden and readily achievable standards must "be weighed and applied *proportionally* and *contextually* to the public accommodation *at issue relative* to the remedial action needed." (*Id.* (emphasis added).) A blanket policy to seek out and proactively prevent *all* access barriers fails to account for the specific barrier at issue, the access it allegedly denies, and the burden and achievability of the contemplated remedy considering the circumstances of the particular public accommodation and its property at issue. In other words, accepting Plaintiffs' interpretation of Section 211 would circumvent the balancing of competing interests the ADA requires. Thus, Plaintiffs' interpretation ultimately asks this Court to change the law rather than apply it.

Seeking to bypass this Congressionally-required balancing of interests, Plaintiffs cite an unverified article about Speedway's 2017 profits and argue Speedway can afford to implement the still-undefined proactive policy they request the Court impose. (*See* Pl. Br. at 14-15.) This irrelevant and shortsighted argument ignores that accepting Plaintiffs' legal interpretation of Section 211 would apply to *all* public accommodations, not just Speedway. It would even require "a small single-location convenience store" without "enough financial resources to fully implement an accessibility requirement" to adopt such a policy. (*Id.*) As Congress, DOJ, and the Third Circuit have already concluded, it is unrealistic, irrational, and legally-improper to mandate that public accommodations pursue remediation of hypothetical ADA violations at all costs.

### 3. That Speedway Has Adopted a Maintenance Policy Shows Its Efforts to Comply with the ADA and in No Way Establishes that Section 211 *Requires* Such a Policy.

Plaintiffs' Brief acknowledges that Speedway works to comply with ADA requirements, and does not ignore its obligations, by making much of the fact that Speedway has a policy in place

to periodically perform inspections of its facilities for certain types of access barriers. Plaintiffs argue that since Speedway has undertaken to inspect and maintain the accessibility of some features, it must agree that Section 211 requires such a policy. No law supports this argument and, tellingly, Plaintiffs cite no law in that section of their Brief. The mere existence of Speedway's visual site-inspection policy is not tantamount to a judicial admission that the ADA or Section 211 require an ongoing self-evaluation policy on parking lot slopes, for which DOJ provides no guidance. Nor is it an admission that such a policy, if required, should broadly encompass **all** features of each facility, including features for which it would be incredibly costly, burdensome, and impractical to periodically inspect and maintain. That simply is a bridge too far.

### C. Plaintiffs Have No Private Right of Action to Enforce Section 211.

Although Congress created a private right of action to remedy violations of Title III, *see* 42 U.S.C. § 12188(a), Plaintiffs do not deny that **Congress** never created a corresponding private right of action to enforce Title III's **regulations**, including Section 211. Plaintiffs, instead, argue that "the ADA's implementing **regulations** expressly provide for a private right of action," citing to 28 C.F.R. § 36.501. (Pl. Br. at 18 (emphasis added).) That argument falls flat, however, because "[l]anguage in a regulation may invoke a private right of action that **Congress through statutory text** created, but it may **not create a right that Congress has not**." *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001) (emphasis added). Plaintiffs cannot identify any statutory text creating a private right of action to enforce this Section 211 regulation. There is no such language in § 12188. Nor is there any language creating a private right of action to enforce Section 211 in the Civil Rights Act of 1964, the remedies of which Plaintiff notes have been incorporated into § 12188.

Contrary to Plaintiffs' insinuation, this is not a case where Plaintiffs are seeking to enforce both a statute for which a private right of action exists as well as "the authoritative interpretation of the statute." (Pl. Br. at 19.) Plaintiffs cite no statute creating an ongoing obligation to seek out

and remedy potential ADA violations, as they submit Section 211 requires. Hence, under binding Third Circuit precedent, even if Section 211 imposed such an ongoing obligation (it does not), Plaintiffs would still have no private right of action to enforce it. *See Three Rivers Ctr. for Indep. Living v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 424 (3d Cir. 2004).[3]

Two additional factors reinforce that Plaintiffs may not obtain the relief they seek. First, injunctive relief under Title III is available only upon a "showing of an *existing* violation." *Iverson v. Comsage, Inc.*, 132 F. Supp. 2d 52, 53 n.1 (D. Mass. 2001) (emphasis added). The injunctive relief Plaintiffs seek would establish an ongoing obligation by Speedway to seek out *potential* or *hypothetical* violations rather than an *existing* one. Second, a private right of action is available only if a statute has created a personal right. *See Three Rivers*, 382 F.3d at 424. Here, contrary to Plaintiffs' contention, Section 211 does not construe a personal right the ADA created. The ADA clearly focuses on the "person regulated" rather than the "individual protected," thereby reflecting Congress's intent to create a public (not personal) right, for which no private right of action exists. And even if the ADA did somehow create a personal right, Plaintiffs have failed to show that Congress expressed its intention to create a private remedy to enforce that purported personal right.

---

[3] Plaintiffs cite a string of cases they claim establish that a private right of action exists to enforce the ADA's implementing regulations. (*See* Pl. Br. at 21, n.15.) None of those cases are binding, and all involve distinguishable facts and different regulations (not Section 211). In *Shariff v. Radamar Meat Corp.*, the parties did not contest, and the court did not rule on, the issue of a private right of action. No. 11-cv-6369, 2014 WL 1311563 (E.D.N.Y. Feb. 14, 2014). *Brooke v. A-Ventures, LLC*, a default-judgment case, also fails to address the issue of a private right of action. No. 2:17-cv-2868, 2017 WL 5624941 (D.Ariz. Nov. 22, 2017). *U.S. v. AMC Ent., Inc.* is also distinguishable because DOJ actually brought that suit to enforce a different regulation. 549 F.3d 760, 762 (9th Cir. 2008). While the plaintiffs in *Loeffler v. Staten Island Univ. Hosp.* originally asserted a claim under the ADA, the district court granted summary judgment for the defendant on the ADA claim and it was not at issue on appeal. 582 F.3d 268, 273-74 (2d Cir. 2009). Finally, in *Santiago Ortiz v. Caparra Center Assocs., LLC*, the court concluded the plaintiffs had standing, 261 F. Supp. 3d 240, 249 (D.P.R. 2016), but standing is a separate issue from a private right of action, and standing is not challenged in the present Motion.

### D. The Canon of Constitutional Avoidance Bars Plaintiffs' Interpretation of Section 211.

The fundamental problem with Plaintiffs' claims, as *Mielo* forecast, is that no legal standards exist giving Speedway notice of what it must do to comply with Plaintiffs' proffered interpretation of Section 211 and its vague, ongoing self-evaluation and prospective remediation requirement. Even Plaintiffs' counsel, a firm specializing in cases like this, cannot articulate precisely how Speedway must change its policies to comply with this supposed requirement.

Plaintiffs contend the text of Section 211 is not unconstitutionally vague, pointing out that "the DOJ has provided extensive guidelines in the form of the U.S. Department of Justice, 2010 ADA Standards for Accessible Design (September 15, 2010), technical guidance materials, manuals, and handbooks." (Pl. Br. at 22.) However, it is not the text of Section 211 that is unconstitutionally vague but, instead, Plaintiffs' "novel interpretation" of the text. Further, absent from the DOJ guidance documents is anything alerting public accommodations that they have an ongoing duty to seek out and anticipatorily remedy future, hypothetical ADA violations regarding parking lot slope, irrespective of cost or burden. Even the "maintenance list" referenced by Plaintiffs (*see* Pl. Br. at 22) requires no such ongoing duty to measure the grade of the slope on a regular basis or to proactively seek out other ADA violations. Thus, nothing in the text of the statute, the implementing regulations, or DOJ guidance gives public accommodations fair warning of the sweeping obligation Plaintiffs want to judicially impose for the first time.

Because Plaintiffs seek to have this Court interpret Section 211 in a manner that would deprive Speedway of fair notice, *see Cunney v. Bd. of Trustees of Grand View*, 660 F.3d 612, 621 (2d Cir. 2011), the Court must avoid that unconstitutional result and instead grant summary judgment in favor of Speedway.

WHEREFORE, for all of the foregoing reasons, Speedway requests that the Court grant its Motion for Partial Summary Judgment and dismiss with prejudice Plaintiffs' Section 211 claims.

Dated:  January 11, 2019                                Respectfully submitted,


                                                        */s/ April M. Byrd*
                                                        April M. Byrd
                                                        Shook, Hardy & Bacon L.L.P.
                                                        Two Commerce Square
                                                        2001 Market Street, Suite 3000
                                                        Philadelphia, PA  19103
                                                        215.278.2555

                                                        **Attorneys for Defendant Speedway LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of January, 2019, a true and correct copy of the foregoing was served by electronic mail upon the following counsel of record:

>Benjamin J. Sweet
>Stephanie K. Goldin
>CARLSON LYNCH SWEET
>   KILPELA & CARPENTER, LLP
>1133 Penn Avenue, 5th Floor
>Pittsburgh, PA  15222
>bsweet@carlsonlynch.com
>sgoldin@carlsonlynch.com
>***Attorneys for Plaintiffs***

>/s/ April M. Byrd
>April M. Byrd